1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRIAN HERRON,                          Case No.: 1:09-cv-02165 AWI JLT (PC)

12          Plaintiff                        FINDINGS AND RECOMMENDATION
                                             GRANTING DEFENDANT'S MOTION
13      vs.                                  FOR SUMMARY JUDGMENT

14    DELROSARIO, et al.,                    (Doc. 48)

15               Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18    action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that he fell and suffered injuries while

19    housed at Wasco State Prison.  (Doc. 28 at 5)  He claims that after this, he was denied medical

20    treatment by Defendant Vega.  Id. at 10-12.

21          Now pending before the Court, is Defendant's motion for summary judgment.  (Doc. 48)

22    Despite being warned of the consequences of failing to oppose the motion, Plaintiff has filed no

23    opposition.  For the reasons set forth below, the Court recommends Defendant's motion for

24    summary judgment be **GRANTED**.

25    I.      **BACKGROUND**

26          Plaintiff was involved in a car accident in 2003 that resulted in degenerative joint disease

27    in his right hip and led to the California Department of Corrections and Rehabilitation's

28    ("CDCR") classification of him as permanently disabled and mobility impaired.  Fact 3; Doc. 28

at 1.  At that time, he was also diagnosed with chronic back pain, meniscal tearing in his left knee, a damaged left shoulder, carpel tunnel syndrome, and Hepatitis C.  (Id.)

Between January 28, 2009 and March 30, 2009, Plaintiff was housed at Wasco State Prison.  Fact 1.  Soon after he arrived at Wasco on January 30, 2009, he was examined by a facility doctor who prescribed him gabapentin (generic Neurontin), which was intended to relieve his neuropathic pain.  Facts 4-5.  From this time until he was transferred away from Wasco, he received this medication.  Facts 6, 32, 33, 44, 47, 50.

On February 12, 2009, Plaintiff alleges he awoke to discover that his toilet was overflowing in his cell.  (Doc. 28 at 8.)  Plaintiff slipped in the liquid and fell. Fact 7.  Though Plaintiff had no external injuries and did not appear to be in acute distress, due to the fact that he claimed to be suffering from numbness, tingling and paraplegia in his legs, he was transported to San Joaquin Hospital for evaluation.  Fact. 10.  A brain MRI was normal although it revealed a sinus infection.  Fact. 11.  A CT scan and an MRI of his cervical spine revealed no injury related to his fall.  Facts 12-17.  An MRI of his thoracic and lumbar spine revealed no injury caused by the fall.  Facts 18-24.  Indeed, there was no medical evidence that the fall caused any injury or exacerbated the injuries Plaintiff had suffered in 2003.  Facts 25-28.  Although Plaintiff alleged that the doctors at San Joaquin recommended surgery but it was denied by prison officials for budgetary reasons (Doc. 28 at 9), indeed, the hospital doctors found no medical explanation for Plaintiff's subjective complaints and did not recommend surgery.  Facts 28-29.  Also, Plaintiff has admitted that no doctor has told him that the fall exacerbated his pre-existing injury.  Fact 27.

On February 24, 2009, Vega reviewed Plaintiff's written request for eyeglasses.  Facts 34, 36.  She gave the request to the office technician to forward it to the Specialty Clinic so that an appointment could be made for Plaintiff to see an optometrist.  Fact 35.

On February 26, 2009 Vega received an appeal submitted by Plaintiff and reviewed it that same day.  Fact 42.  Plaintiff had submitted the appeal on February 21, 2009 to the appeals office, in which requested to see a doctor.  Fact 39, 40.  That office forwarded the appeal to the clinic for review.  Fact 41.

In response to the appeal, Vega wrote, "schedule appointment with M.D. in 2-3 weeks,"

1   and returned the response to the appeals office.  Id.  A few days later, on March 5, 2009, Plaintiff

2   was seen by Dr. Ashby who noted that he did not appear to be in acute distress.  Fact 46.  Dr.

3   Ashby continued Plaintiff's prescription for gabapentin and also prescribed tramadal which is a

4   pain medication used to treat moderate to severe pain.  Fact 47.

5       On March 25, 2009, Vega saw Plaintiff for complaints of lower back pain.  Fact 49.

6   Though he rated his pain as an 8-out-of-10, he was able to converse normally and to walk using a

7   cane.  Id.  Given Plaintiff's subjective complaints, Vega referred him to be seen on an "urgent"

8   basis by a doctor.  Fact 51.  She did not refer him for "immediate" treatment because he did not

9   meet the criteria for an immediate doctor visit.  Id.  Vega gave the "urgent" referral to the office

10  technician whose job duties required scheduling appointments with the doctors.  Fact 52.

11      On March 8, 2009 and April 14, 2009, Plaintiff underwent spinal x-rays which revealed

12  no significant degenerative changes.  Facts 55-56.  On May 12, 2009, Plaintiff underwent EMG

13  testing which revealed no evidence of lumbosacral radiculopathy and ruled out paraplegia, muscle

14  weakness, radiculopathy in the legs and ruled out severe back pain.  Fact 57.

15  **II.    LEGAL STANDARD**

16      **A.    Summary Judgment**

17      Summary judgment is appropriate when "the pleadings, the discovery and disclosure

18  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

19  that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact

20  is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

21  248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a

22  reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

23      A party seeking summary judgment "always bears the initial responsibility of informing

24  the district court of the basis for its motion, and identifying those portions of the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

26  which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v.

27  Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party

28  will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no

1   reasonable trier of fact could find other than for the moving party." <u>Soremekun v. Thrifty</u>

2   <u>Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party

3   will have the burden of proof, however, the movant can prevail merely by pointing out that there

4   is an absence of evidence to support the nonmoving party's case." <u>Id</u>. (citing <u>Celotex</u>, 477 U.S. at

5   323).

6          If the moving party has sustained its burden, the nonmoving party must "show a genuine

7   issue of material fact by presenting affirmative evidence from which a jury could find in [its]

8   favor." <u>FTC v. Stefanchik</u>, 559 F.3d 924, 929 (9th Cir. 2009) (citing <u>Anderson</u>, 477 U.S. at 257

9   (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material

10  issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere

11  scintilla of evidence in [its] favor" to withstand summary judgment.  <u>Stefanchik</u>, 559 F.3d at 929.

12  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

13  nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Electric Indus. Co. v. Zenith</u>

14  <u>Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citation omitted).

15         In resolving a summary judgment motion, "the court does not make credibility

16  determinations or weigh conflicting evidence."  <u>Soremekun</u>, 509 F.3d at 984.  Rather, "the

17  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

18  in [its] favor." <u>Anderson</u>, 477 U.S. at 255.  See <u>T.W. Electric Service, Inc. v. Pacific Electric</u>

19  <u>Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out

20  of the air; it is the nonmoving party's obligation to produce a factual predicate from which the

21  inference may justifiably be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-

22  45 (E.D. Cal. 1985).

23         The court must apply standards consistent with Federal Rule of Civil Procedure 56 to

24  determine whether the moving party has demonstrated that there is no genuine issue of material

25  fact and judgment is appropriate as a matter of law.  <u>Henry v. Gill Indus., Inc.</u>, 983 F.2d 943, 950

26  (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence

27  provided by the parties, including pleadings depositions, answer to interrogatories, and

28  admissions on file.  *See* Fed. R. Civ. P. 56(c).

4

1

2    **B.      Eighth Amendment – Denial of medical care**

3        The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized

4    standards, humanity, and decency.' " Estelle v. Gamble, 429 U.S. 97, 102 (1976), quoting

5    Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.1976). Included in the prohibition of cruel and

6    unusual punishments is a responsibility placed upon prison officials to provide medical care to

7    prisoners. Id. at 104–05. To claims arise in the context of inadequate medical care, a prisoner

8    must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

9    medical needs." Id. at 106. In the Ninth Circuit, a cognizable claim has two elements: "the

10   seriousness of the prisoner's medical need and the nature of defendant's response to that need."

11   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991), overruled on other grounds by WMX

12   Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997); see also Jett v. Penner, 429 F.3d 1091,

13   1096 (9th Cir.2006).

14                 **1.      Serious medical need**

15        A serious medical need exists "if the failure to treat the prisoner's condition could result in

16   further significant injury or the 'unnecessary and wanton infliction of pain.' " McGuckin, 974

17   F.2d at 1059, quoting Estelle, 429 U.S. at 104. Indications of a serious medical need include

18   "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy

19   of comment or treatment; the presence of a medical condition that significantly affects an

20   individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059–60,

21   citing Wood v. Housewright, 900 F.2d 1332, 1337–41 (9th Cir.1990).

22        In his complaint, Plaintiff alleges that he fell on February 12, 2009 which caused him to

23   suffer leg tingling and numbness and paraplegia. Fact 9. However, the diagnostic testing

24   conducted at San Joaquin Hospital found no evidence of injury related to the fall and no medical

25   explanation for Plaintiff's claims of injuries.  (Doc. 50-5 at 3-4)  Dr. Alexan-Shirabad noted,

> This patient has paraplegia. I cannot find a neurological explanation or a
> neurological lesion to explain these symptoms. There is discordance between the
> objective finding and the subjective finding. Based on the MTI findings, patient
> should be able to move his legs without significant limitation.

Id. at 3.  Likewise Dr. Rashidi found,

> His left leg weakness cannot be explained by the disc herniation at LS/S 1 and also the patient has degenerative changes and old changes at LS/S 1 level. The cervical spine does not show any cord edema of the cervical spine. I do not believe that the patient's symptoms are related to the LS/Sl herniation.

Id.  Moreover, the extensive diagnostic testing Plaintiff underwent after his release from San Joaquin Hospital further documented the lack of objective findings that supported that Plaintiff suffered injury during his fall or, indeed, that the preexisting condition was not well-managed.  Id. at 3-6.  In fact, Dr. Klang, the Chief Physician and Surgeon at Wasco State Prison, has opined that Plaintiff's claims of severe pain in February and March 2009 are not supported by objective medical evidence.  Id. at 6.  Though Dr. Klang does not discount that Plaintiff's conditions could cause mild to moderate pain during this period but the medication he received were sufficient to manage his pain symptoms related to the injuries he suffered in 2003 before he entered prison.  Id. at 5.  Dr. Klang has reported that at most, Plaintiff suffered minor back pain which was medically appropriate.  Id.  In Dr. Klang's opinion, a patient should not be medicated to the point that he feels no pain.  Id.  Some amount of pain is desirable in order to assist the patient in limiting his activities to prevent those which are too strenuous or prolonged.  Id.

Finally, Dr. Klan opined that the degeneration in Plaintiff's spine documented in February and March 2009 was not emergent and did not require immediate treatment.  (Doc. 50-5 at 5-6)  Instead, Dr. Klang explained that all people suffer from some amount of spinal degeneration; the pain caused by degeneration in the low back generally does not increase over time and, in fact, it usually improves.  Id. at 6.

Given this evidence, it does not appear that Plaintiff suffered from a serious medical condition between the time of his fall on February 12, 2009 and his transfer away from Wasco on March 30, 2009.  Therefore, the Court recommends Defendant's motion for summary judgment be **GRANTED**.

## 2.  Deliberate indifference

Even assuming Plaintiff had a serious medical condition at the time of the events raised in the complaint, Plaintiff still must establish Vega responded to that need with deliberate indifference. Farmer, 511 U.S. at 834. "Deliberate indifference is a high legal standard." Toguchi

1     v. Chung, 291 F.3d 1051, 1060 (9th Cir.2004).  A defendant must be "subjectively aware that

2     serious harm is likely to result from a failure to provide medical care." Gibson, 290 F.3d at 1193

3     (emphasis omitted); Farmer, 511 U.S. at 837. Where a defendant should have been aware of the

4     risk of substantial harm but was not, "then the person has not violated the Eighth Amendment, no

5     matter how severe the risk." Id. at 1188.

6        Generally, deliberate indifference to serious medical needs of prisoners may be

7     manifested in two ways: "when prison officials deny, delay, or intentionally interfere with

8     medical treatment, or . . . by the way in which prison physicians provide medical care."

9     Hutchinson v. United States, 838 F.2d 390, 393–94 (9th Cir.1988). Delays in providing medical

10     treatment may manifest deliberate indifference. Estelle, 429. U.S. at 104–05. However, "mere

11     delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference."

12     Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985). In addition to the

13     delay in surgery or treatment, a plaintiff must show harm arose as a result of the delay, such as

14     further medical complications attributable to the delay or pain and suffering. Scott v. Keller, 2010

15     U.S. Dist. LEXIS 95738, at * 12 (E.D.Cal. Sept. 14, 2010); see also Berry v. Bunnell, 39 F.3d

16     1056, 1057 (9th Cir.1994) (per curium).

17        From the medical records, it appears that RN Vega had only limited contact with Plaintiff.

18     On February 24, 2009, Vega reviewed a written request from Plaintiff for eyeglasses and, in

19     response, she referred him for an appointment with an optometrist. Facts 34-36.  She did not see

20     him in person related to this request.  Id.  Plaintiff was seen the next day by Wasco's optometrist.

21     (Doc. 50-4 at 6)

22        Again, on February 26, 2009, Vega reviewed an appeal from Plaintiff in which he

23     requested to be seen by a doctor.  Facts 39-42.  Vega determined that Plaintiff should see a doctor

24     within two-to-three weeks, which was the normal scheduling period. Fact 42; Doc. 50-2 at 3.

25     Even still, he was seen seven days later by Dr Ashby.  Fact 46.  Thus, even if Vega acted

26     improperly by ordering a doctor visit in two-to-three weeks, Plaintiff was not harmed by Vega's

27     action because he was seen more quickly.  In addition, at that time, Dr. Ashby observed Plaintiff

28     was not in any acute distress though he added tramadal to the prescriptions Plaintiff was to

1    receive.  Fact 47.

2          On March 25, 2009, Vega saw Plaintiff for complaints of lower back pain.  Fact 49.

3    Though he claimed significant pain, his objective symptoms did not support this.  Id.  However,

4    Vega referred him to be seen on an "urgent" basis by a doctor.  Fact 51.  She did not refer him for

5    "immediate" treatment because he did not meet the criteria for an immediate doctor visit.  Id. For

6    an immediate consult with a doctor, the patient had to have specific symptoms including,

7    "Positive urine dipstick and patient has signs and symptoms consistent with a UTI; alterations in

8    circulation or sensation, new deformity or discoloration or patient appears ill or has history of

9    fever, chills, headache, nausea, vomiting, or diarrhea; severe muscle cramps; muscle weakness

10   with or without fever, warm or acutely swollen joints."  (Doc. 50-2 at 11)  Plaintiff did not have

11   of these conditions such to justify immediate treatment.  Moreover, there is no indication that the

12   delay in treatment caused Plaintiff any harm.

13         In summary, the evidence demonstrates that Vega did not act with deliberate indifference

14   to Plaintiff's medical care.  She acted according to her observations and within the procedures set

15   forth at the prison.  The fact that Plaintiff preferred more speedy or different treatment is not

16   sufficient.  Therefore, the Court recommends that Defendant's motion for summary judgment be

17   **GRANTED**.

18   **III.    Findings and Recommendation**

19         For the reasons set forth above, the Court concludes that Farley is entitled to summary

20   judgment and recommends that the motion be **GRANTED**.

21         These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the

23   Local Rules of Practice for the United States District Court, Eastern District of California. Within

24   14 days after being served with these findings and recommendations, any party may file written

25   objections with the Court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."

27   ///

28   ///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 5, 2012**                 **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE